IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MARK REDDEN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2211-S-BN |
| | § | |
| OFFICER PENLAND AND OFFICER | § | |
| JOHN DOE, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Christopher Mark Redden, then-detained pretrial at the Dallas County

jail, initially filed a *pro se* civil rights complaint against some 20 defendants concerning

his arrest and then-ongoing state criminal prosecution (for felony DWI) and conditions

at the jail. *See* Dkt. No. 3.

His action has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from the presiding United States district judge.

The Court screened Redden's claims, dismissing certain claims without prejudice

and administratively closing this action as to those claims that were properly joined.

*See Redden v. Penland*, No. 3:18-cv-2211-S-BN, 2018 WL 4955242 (N.D. Tex. Sept. 19,

2018), *rec. accepted*, 2018 WL 4955229 (N.D. Tex. Oct. 11, 2018).

The Court later granted Redden's motion to reopen this action and dismissed all

then-pending claims as currently barred under *Heck v. Humphrey*, 512 U.S. 477 (1994),

except his Fourth Amendment claim for excessive force against defendants identified as Officer Penland with the Richardson Police Department and an unidentified Richardson police officer, both of whom arrested Redden. *See Redden v. Penland*, No. 3:18-cv-2211-S-BN, 2018 WL 6984877 (N.D. Tex. Dec. 13, 2018), *rec. accepted*, 2019 WL 144181 (N.D. Tex. Jan. 9, 2019).

The excessive force claim was allowed to proceed, and the Court ordered service. *See* Dkt. Nos. 24, 25, 26, 30, & 31.

Defendant Dustin Penland answered the complaint. *See* Dkt. No. 32. And he filed a court-ordered motion for summary judgment on his affirmative defense of qualified immunity. *See* Dkt. Nos. 37-40; *see also* Dkt. No. 34.

The Court denied Redden leave to conduct qualified-immunity-related discovery, see Dkt. No. 44, ruling that his requests did "not fit within the limited scope of a discovery request 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,'" *Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2019 WL 1957997, at *3 (N.D. Tex. May 2, 2019) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)), and failed "to advance the second step of the 'careful procedure' set forth in *Backe, Wicks[ v. Miss. State Employment Servs., Inc.*, 41 F.3d 991 (5th Cir. 1995)], and *Lion Boulos*," by identifying the "'questions of fact [that the Court] needs to resolve before it would be able to determine whether the [Penland is] entitled to qualified immunity,'" *id.* (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); citation and original brackets omitted).

Redden responded to the summary judgment motion. *See* Dkt. No. 45. And Penland filed a reply. *See* Dkt. No. 46.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss the remaining claim – and thus this action – with prejudice.

## Legal Standards and Analysis

### I.    Qualified Immunity

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); brackets omitted). "But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)). If they do, a court must consider each official's actions separately. *See, e.g., Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*,

571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015); *cf. Rich*, 920 F.3d at 294 ("In sum, QI 'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018))); *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (Courts "must think twice before denying qualified immunity.").

Review of a motion for summary judgment based on qualified immunity is accomplished in two steps, and, while a court may conduct the required two-step examination in any order, *see Pearson*, 555 U.S. at 236, "deciding the two prongs in order 'is often beneficial,'" *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Regardless which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court must also decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have

known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to

determine "whether the defendant's conduct was objectively reasonable in light of the

clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is,

"whether it would have been clear to a reasonable [official] in the [defendants'] position

that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572

U.S. 744, 758 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal

quotation marks and original brackets omitted); *see also Mullenix*, 136 S. Ct. at 308

("[a] clearly established right is one that is 'sufficiently clear that every reasonable

official would have understood that what he is doing violates that right'"(quoting

*Reichle v. Howards*, 566 U.S. 658, 664 (2012))).

> This inquiry "must be undertaken in light of the specific context of the
> case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308
> (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)). The [United
> States] Supreme Court does "not require a case directly on point, but
> existing precedent must have placed the statutory or constitutional
> question beyond debate." *al-Kidd*, 563 U.S. at 741 "It is the plaintiff's
> burden to find a case in [her] favor that does not define the law at a 'high
> level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th
> Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir.
> 2016)).

*Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (citations

modified).[1]

---

[1] *See also Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc)
(A court "must be able to point to controlling authority – or a robust consensus of
persuasive authority – that defines the contours of the right in question with a high
degree of particularity." (footnote and internal quotation marks omitted)); *Lincoln v.
Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to
find clearly established law, we must consider 'the overall weight' of such authority.
A 'trend' alone is just that. As of December 2013, only two circuits had weighed in

The Supreme Court recently explained this inquiry in the Fourth Amendment

context:

> Where constitutional guidelines seem inapplicable or too remote, it does
> not suffice for a court simply to state that an officer may not use
> unreasonable and excessive force, deny qualified immunity, and then
> remit the case for a trial on the question of reasonableness. An officer
> "cannot be said to have violated a clearly established right unless the
> right's contours were sufficiently definite that any reasonable official in
> the defendant's shoes would have understood that he was violating it."
> That is a necessary part of the qualified-immunity standard.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Plumhoff v.

Rickard*, 572 U.S. 765, 778-79 (2014); reversing denial of summary judgment on a

qualified immunity defense); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2018)

(per curiam) (reversing dismissal of a *pro se* complaint based on the defendants'

entitlement qualified immunity where the district court failed to liberally interpret the

Fourth Amendment claims).

"When a defendant asserts qualified immunity, the plaintiff bears the burden

of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*,

918 F.3d 414, 416-17 (5th Cir. 2019) (citing *Zapata*, 750 F.3d at 485; *McClendon v. City

of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)); *cf. McLin v. Ard*, 866 F.3d

---

on the 'contours of the right.' These cases alone do not provide sufficient authority
to find that the law was clearly established." (footnote omitted)); *Bustillos*, 891 F.3d
at 222 (holding that the plaintiff failed to shoulder her burden to "point[] ... to any
case that shows, in light of the specific context of this case, that the [defendants']
conduct violated clearly established law" and that, although the court's
"independent review [ ] uncovered" persuasive authority, "a single, fifty year old
case from another circuit is [not] sufficient in this instance to have 'placed the ...
constitutional question [at issue] beyond debate'" (quoting *al-Kidd*, 563 U.S. at
741)).

682, 688 (5th Cir. 2018) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'" (quoting *Zapata*, 750 F.3d at 485 (quoting, in turn, *Backe*, 691 F.3d at 648))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' ... 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (citations omitted).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda*, 723 F.3d at 599. "If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July

1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan*, 572 U.S. at 651 ("In articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).[2] And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*,

_____

[2] *See, e.g., Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam) ("Mitchell's allegations in his verified complaint serve as competent summary judgment evidence and suggest a possible constitutional violation. ... Based on Mitchell's proffered facts, the appellants' use of force was not made in a 'good faith effort to maintain or restore discipline' and was not 'nontrivial' but disproportionate to any possible provocation. ... On Mitchell's allegations, as summarized by the district court, the appellants have not shown that their course of conduct was not objectively unreasonable under clearly existing law. Accordingly, they have not demonstrated that they are entitled to qualified immunity as a matter of law." (citations omitted)).

601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

## II.    Excessive Force

"To prevail on a Section 1983 excessive force claim, 'a plaintiff must establish:

(1) injury (2) which resulted directly and only from a use of force that was clearly

excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v.*

*Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767,

772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir.

2008)); citing *Graham v. Connor*, 490 U.S. 386, 393-97 (1989)).

> Accidental contact between an officer and a civilian is not a Fourth
> Amendment seizure – even if it injures the civilian – so a § 1983 plaintiff
> claiming excessive force must show that force was applied intentionally.
> *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (explaining that
> a seizure occurs only when a suspect's "freedom of movement" is
> terminated "through means intentionally applied" by the governmental
> actor); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (holding there
> can be no § 1983 liability for excessive force "in the absence of intentional
> conduct"). And even if the seizure involves intentional conduct, the
> district court must consider whether it was unreasonable under the
> specific circumstances of the seizure. *See, e.g., City of Escondido v.*
> *Emmons*, 139 S. Ct. 500, 503-04 (2019) (per curiam) (reversing the denial
> of qualified immunity where officers threw a man to the ground during
> an arrest).

*McDonald v. McClelland*, 779 F. App'x 222, 225-26 (5th Cir. 2019) (per curiam).

> In excessive-force claims under the Fourth Amendment, the
> reasonableness of an official's conduct depends on "the facts and
> circumstances of each particular case, including the severity of the crime
> at issue, whether the suspect poses an immediate threat to the safety of
> the officers or others, and whether he is actively resisting arrest or
> attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court
> must adopt "the perspective of a reasonable officer on the scene, rather
> than [judge] with the 20/20 vision of hindsight." *Id.* "The calculus of
> reasonableness must embody allowance for the fact that police officers are
> often forced to make split-second judgments – in circumstances that are

tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

*Brothers v. Zoss*, 837 F.3d 513, 518-19 (5th Cir. 2016) (footnote omitted).

In support of his excessive force claim,

Redden alleges that someone, who failed to identify himself, "jumped [him] from behind" while he was retrieving his mail. Dkt. No. 3 at 9. According to Redden, the unidentified individual then pulled Redden's arms behind Redden and over his head. *See id.* As a result, Redden states, "my right shoulder/collar bone popped loudly and caused severe pain shooting all down my arm." *Id.* Redden then alleges that Officer Penland "pull[ed] on" his arms again. *Id.*

*Redden*, 2018 WL 6984877, at *4 (concluding that, "[f]or screening purposes, this version of events reflects that an unnamed officer – and possibly also Penland – used force in arresting Redden that caused Redden injury, and thus that force could have been unreasonable").

But Redden's allegations are not verified. And he otherwise offers no evidence to support his claims.

Penland, on the other hand, supports his motion for summary judgment with a Richardson Police Department Initial Custody Narrative, *see* Dkt. No. 39 at 3-5, verified by a business records declaration, *see id.* at 6-7. As to Redden's arrest, the Narrative provides:

Officer Penland and Officer Cline arrived at 1111 Abrams Rd, Richardson, Dallas County, Texas and observed Aguilera pointing toward a silver Chevrolet Cruze advising it was the vehicle [that was driving

erratically] they were following. Officer Penland and Officer Cline observed a white male, older, thin, grey hair, wearing black shirt, grey dress pants, and glasses walking away from the area where the vehicle was parked. Officer Penland and Officer Cline made contact with the male, determined to be Christopher Mark Redden ... , and observed him to be slightly swaying while walking, had moderate odor of alcohol, and slurred speech. Redden stated "I just got my car out of the shop. It was all messed up already anyways!" as he pointed toward the silver Chevrolet Cruze witness Aguilera had pointed out to Officers. Redden had his hands in his pockets and Officer Penland asked him to remove them. Redden removed his hands but almost immediately placed them back in his pockets. Officer Penland gave second command to remove hands from pocket and Redden did not comply. Officer Penland and Officer Cline placed Redden in handcuffs for safety due to noncompliance. Officer Penland asked Redden if he had been drinking today and he said no. Redden did say he had taken Ativan and Tylenol three.

*Id.* at 3-4.

The uncontroverted evidence thus reflects that both officers arresting Redden were objectively reasonable in light of the facts and circumstances they confronted. The Court should therefore grant the motion for qualified immunity and dismiss the sole remaining claim – for excessive force – and therefore this action with prejudice.

## Recommendation

The Court should grant the motion for summary judgment as to qualified immunity [Dkt. No. 37] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 21, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-12-